430 So.2d 55 (1983)
Armantine M. SMITH
v.
TRAVELERS INSURANCE COMPANY, et al.
No. 82-C-2054.
Supreme Court of Louisiana.
April 4, 1983.
Rehearing Denied May 13, 1983.
*56 Theodore A. Mars, Jr., Steven O. Medo, Jr., Mars & Medo, W.W. Young, Jr., W.W. Young, III, Young & Young, New Orleans, for applicant.
Mark B. Meyers, Phelps, Dunbar, Marks, Claverie & Sims, John J. Weigel, Madeline Fischer, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for respondents.
*57 MARCUS, Justice.
Armantine M. Smith instituted this action for damages for personal injuries sustained by her in a one-vehicle accident against Jerry Krushin, driver of the automobile, Travelers Insurance Company, public liability insurer of the vehicle, and Arthur Henry Chester, representative of certain underwriters at Lloyds of London, excess insurer of the vehicle. Plaintiff alleged that Krushin had attempted to park his vehicle and as she alighted he suddenly and without warning put the car in reverse and started backing up, causing her to be thrown to the ground and struck by the automobile. Defendants filed answers generally denying the allegations of the petition and affirmatively asserting the defense of contributory negligence.
After trial, the jury, by a nine to three vote, returned a general verdict in favor of defendants and against plaintiff dismissing plaintiff's suit at her cost. The verdict was made the judgment of the court. The court of appeal, with one judge dissenting, finding no negligence on the part of Krushin, affirmed the judgment of the trial court.[1] On plaintiff's application, we granted certiorari to review the correctness of that decision.[2]
The facts in this case are generally not in dispute. The accident occurred in the early morning hours of December 27, 1978. On the afternoon of December 26, 1978, plaintiff and her friend, Revonda Surratt, made plans to go shopping. Plaintiff drove to Surratt's apartment which was also occupied by Jerry Krushin.[3] After dining at the apartment, plaintiff, Krushin and Surratt left to go shopping at Oakwood Shopping Center.[4] The stores closed at about 9:00 or 9:30 and the trio decided to go to Nick's Bar. Upon their arrival, each purchased and consumed a round of drinks. The two ladies were invited and accepted an invitation by two men to leave the bar and smoke a marijuana cigarette. Each of the ladies had four or five puffs. Krushin, although invited, remained in the bar and did not participate in this activity. The ladies then returned to the bar where they consumed one or two more drinks.
At about 12:30 or 1:00 a.m. plaintiff, Krushin and Surratt left the bar for the purpose of returning to the apartment complex. The three occupied the front seat of the car with Krushin driving, Surratt in the middle and plaintiff to the extreme right next to the door. During the ride, the radio was playing and the girls carried on a conversation. As they entered the apartment complex, a song came on the radio that Krushin liked. Instead of turning to the left, which led to his apartment, he turned to the right. Plaintiff, noticing that this was not the way to the apartment, asked why they had turned the wrong way and was informed by Surratt that Krushin wanted to hear the end of the song. Krushin then increased the volume of the radio to a "loud" level.[5] As they were driving through the complex, plaintiff noticed a swimming pool and swings to her right which she had never seen before. The two ladies began to discuss the area and it was suggested that they get out and play on the swings. At this point, Krushin turned left into a parking area across the street from the pool and swings. There were about three empty parking bays to his right and only one-half of a parking bay to his left. Although splitting a bay, he pulled completely into the parking area within a foot *58 of a retaining wall. He came to a complete stop and both plaintiff and Surratt thought all three of them were going to get out to look at the swings. Plaintiff opened her door to exit and Surratt was prepared to follow. Plaintiff placed her right foot on the ground. As she did so, Krushin, looking only to his left and failing to notice that the interior dome light had come on when plaintiff opened the door, put the car in reverse and began to back out of the parking area. Plaintiff lost her balance, fell to the ground and the open door traveled across her back "popping" her spine. She is now paralyzed.
The issues to be resolved in this litigation are (1) whether Krushin was negligent, (2) if so, whether plaintiff's claims are nonetheless barred by her contributory negligence,[6] and (3) if plaintiff is entitled to recover, the amount of damages.
The standard of conduct required of persons in Louisiana in their relationships with one another as a basis of delictual liability is set forth in La.Civ.Code arts. 2315 and 2316.
Article 2315 provides in pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Article 2316 provides:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Persons are liable for acts of commission and omission that cause damage to another under these articles if a duty imposed by the relationship of the parties is breached by such act or omission. We have stated in discussing whether a duty exists as a result of the relationship between the parties under the duty-risk analysis of tort liability that
[a]ll rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designated to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises.
Dornak v. Lafayette General Hospital, 399 So.2d 168 (La.1981); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
A driver of an automobile has a duty to his guest passengers to use reasonable care in the operation and control of his vehicle. The question which remains is whether this duty encompasses within its scope the risk that a guest passenger will attempt to exit from a car and be injured when the driver brings the vehicle to a complete stop in a designated parking area and the driver without warning immediately puts the car in reverse. We think so.
In the instant case, defendant turned into a designated parking area and came to a complete stop. With the radio still playing very loud, he looked only to his left, put the car in reverse and failed to notice that the interior dome light came on when plaintiff attempted to exit the car. Under these circumstances, we conclude that Krushin breached the duty he owed to plaintiff to exercise reasonable care in the operation and control of his vehicle and the risk of plaintiff's injury was within the scope of that duty. Inasmuch as Krushin's negligent conduct was a cause in fact of the accident and resulting injuries, he is liable to plaintiff. Hence, we consider that Krushin was negligent and at fault within the meaning of La.Civ.Code arts. 2315 and 2316.
Defendants contend that if we should find that Krushin was negligent, then the *59 record contains ample evidence that plaintiff was contributorily negligent so as to bar her recovery. We disagree.
Contributory negligence is a defense to a tort suit and it is incumbent upon the defendant to prove that the plaintiff was contributorily negligent. Tucker v. Lirette, 400 So.2d 647 (La.1981). A guest passenger owes a duty to herself to ascertain that she can safely disembark from an automobile. Contrary to the contention of the defendants and the instruction given by the trial judge to the jury in the instant case, this duty does not encompass a responsibility to notify the driver of a stopped vehicle of her intention to alight from the vehicle.[7] Our review of the record reveals nothing which would indicate that plaintiff could not have made a safe exit absent Krushin's negligent conduct.
Krushin testified that he pulled into the parking area merely to turn around and return to his section of the apartment complex. However, he pulled completely into the parking area within a foot of a retaining wall and left very little room on his left hand side in which to complete the turn-around maneuver he anticipated. Although Krushin testified that he did not hear the conversation between plaintiff and Surratt with regard to the swings, he turned into an area directly across the street. While we do not doubt the veracity of his testimony that he pulled in intending to turn around, his actions and the manner in which he pulled the vehicle into the parking area certainly made it reasonable for plaintiff to assume that it would be safe to exit the car. In addition, not only plaintiff, but also Surratt, thought Krushin had parked the vehicle so that they could all go look at the swings. While plaintiff's use of alcohol and marijuana is relevant evidence, we do not consider it probative of her contributory negligence under the facts of this case.
The only disputed question of fact, crucial to a determination of contributory negligence, is whether the automobile was already moving when plaintiff attempted to get out. Plaintiff testified that the vehicle was stopped when she put her foot out. This testimony is supported by a statement that plaintiff gave to the police officer who arrived at the scene shortly after the accident occurred. On the other hand, Revonda Surratt testified at trial that she was not sure or could not recall whether or not the vehicle had begun to move when plaintiff attempted to get out. However, a portion of her previous deposition which was read into the record by plaintiff's counsel at trial was as follows:
My question was: "Had she gotten up from the sitting position from the seat of the automobile?" Your answer was: "Yes, Sir." "So that some of her weight would have been on the foot, is that correct?" Your answer: "Yes, Sir." "Q. Was the car moving when she opened the door to get out?" Your answer was: "When she [plaintiff] started to put her foot out, that was when the car started to move backwards."
Later Surratt testified: "But I have no recollection of when the car started moving." We conclude that the record does not support a finding that the vehicle was moving prior to plaintiff's attempted exit. Hence, we conclude that defendants failed to prove by a preponderance of the evidence that plaintiff was contributorily negligent.
In sum, we find that the jury was clearly wrong in finding that Krushin was not negligent and/or that plaintiff was contributorily negligent. Moreover, we give less credence to the verdict of the jury because the erroneous jury instruction on plaintiff's duty to notify the driver of her intention to disembark probably contributed to the result favorable to the defense. Hence, the court of appeal erred in affirming the judgment of the trial court dismissing *60 plaintiff's action. Since the court of appeal found no liability, it did not reach the issue of quantum. We therefore consider it more appropriate to remand the case to that court for it to determine the amount of plaintiff's recovery.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the court of appeal for further proceedings consistent with the views herein expressed.
LEMMON, J., dissents.
NOTES
[1] 418 So.2d 689 (La.App. 4th Cir.1982).
[2] 421 So.2d 246 (La.1982).
[3] At the time of the accident, Jerry Krushin, his coworker, Claude Elowe, and Revonda Surratt were roommates. At the time of trial, the threesome still resided together although Revonda Surratt and Claude Elowe had married. Krushin and Elowe still worked for the same employer. Thus, there are no truly "disinterested" witnesses to the accident.
[4] The threesome left in a company car owned by Krushin's employer and insured by Travelers and Lloyds.
[5] Krushin had replaced the car radio with a sound system consisting of a bi-amplified Sanyo AM-FM cassette system with two rear mounted 6" × 9" tri-axial speakers.
[6] This accident occurred prior to the amendments to the La. Civil Code establishing comparative negligence.
[7] The trial judge charged the jury as follows:

She [Smith] must ascertain that the driver knew or, under the circumstances, with the exercise of reasonable care could or should have known that which she was going to do, that is, leave the automobile, and failure to ascertain this or to notify him of her intentions, could be considered as a breach of duty on her part.